# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2381 | **DATE** | 6/25/2004 |
| **CASE TITLE** | Bell vs. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order. For the reasons stated in the Memorandum Opinion and Order, defendant's motion for summary judgment [19-1] is granted. Judgment is entered in favor of defendant and against plaintiff.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUN 28 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 14 |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 6/25/2004 | |
| | | 2004 JUN 25 PM 4:42 | date mailed notice | |
| MD | courtroom deputy's initials | FILED | MD | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRUCE E. BELL, | ) | DOCKETED |
| Plaintiff, | ) ) ) | JUN 2 8 2004 |
| vs. | ) ) | No. 03 C 2381 |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) ) ) | Judge Joan H. Lefkow |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Bruce E. Bell ("Bell"), brings this action for judicial review of the Commissioner of the Social Security Administration's final decision that Bell's disability benefits were properly terminated. This court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). Before the court is the defendant's motion for summary judgment.[1] For the reasons stated below, the motion is granted.

## FACTS[2]

### A. Background

On May 12, 1992, Bell applied for Supplemental Security Income, alleging disability

---

[1] Bell did not file a responsive brief to the defendant's motion. Accordingly, the court decides this case based only on the Commissioner's brief submitted. See Local Rule 78.3 ("Failure to file a supporting or answering memorandum shall not be deemed to be a waiver of the motion or withdrawal of opposition thereto ....").

[2] Citations are to the certified administrative record prepared by the Commissioner and filed with this court pursuant to 42 U.S.C. § 405(g).

due to alcohol abuse and a personality disorder. (R. 21-33.) Initially, his request was denied on July 21, 1992. (R. 26.) After reconsideration, Bell's application was granted on June 25, 1993 (R. 42).

On March 27, 2000, the Social Security Administration ("SSA") notified Bell that it was initiating a continuing disability review to determine whether there had been any medical improvement in Bell's impairments. (R. 47-48.) In September 2000, the SSA determined that Bell's health had improved, he was able to work and, accordingly, was no longer eligible for disability benefits. (R. 51-54.) This decision was affirmed on reconsideration. (R. 69-79.)

Bell requested, and was granted, a hearing before an Administrative Law Judge ("ALJ"). (R. 80-81.) On January 31, 2002, Bell testified before ALJ Alan L. Jonas.[3] (R. 310-40.) Bell testified that he occasionally had trouble walking due to arthritis and flare-ups of gout. (R. 330.) He also testified that he did not have any problems sitting, unless he became stiff. (R. 332.) Also testifying at the hearing was Susan Entenberg ("Entenberg"), a vocational expert. Entenberg testified that a person of Bell's age, education, and past work history, who was limited to sedentary work, needed to be in a clean air environment, could not use foot controls, climb, crawl, squat, or kneel, and who was moderately limited in his ability to understand, remember, and carry out detailed instructions, could essentially perform sedentary unskilled work. (R. 338.) Entenberg also testified that Bell could perform assembly jobs (7,000 unskilled, sedentary jobs in the Chicago metropolitan area), inspector jobs (3,000 unskilled, sedentary jobs in the Chicago

---

[3]Defendant is incorrect in stating that Bell appeared before the ALJ with counsel. (Def. Mot. at 1.) The record makes clear that Bell was unrepresented during his hearing before the ALJ. (R. 14, 312-13.)

metropolitan area) and packer jobs (4,000 unskilled, sedentary jobs in the Chicago metropolitan area). (R. 338.)

On August 12, 2002, the ALJ found that Bell had undergone medical improvement as of September 2000 and was no longer disabled. (R. 17-23.) The Appeals Council denied Bell's request for review of the ALJ's decision, thereby rendering the ALJ's decision as the final decision of the Commissioner. (R. 7-10.)

**B.     Medical Evidence**

On July 20, 2000, Bell underwent a psychiatric examination with Dr. Ana A. Gil. (R. 207-09.) Bell stated in this examination that he was able to dress and groom himself and take care of his own hygiene on a daily basis. (R. 208.) He visited family members in Barrington on a weekly basis, walked in the neighborhood, and spent time with his friend. (R. 208.) He watched television and listened to the radio. (*Id.*) Dr. Gil observed Bell as alert, oriented, and engaged; he also related well during their interview. (*Id.*) Dr. Gil observed Bell's thought process as logical, without loose association, and his speech was coherent and relevant. (*Id.*) Bell's judgment was good, his general knowledge was good, and he was able to perform addition, subtraction and multiplication. (R. 209.) Dr. Gil noted that Bell had also decreased his alcohol intake. (R. 207.)[4] Overall, Dr. Gil found Bell's mental status to be normal with no evidence of psychosis or thought process disorder. (*Id.*)

---

[4] The court construes Dr. Gil's report as containing an error when she states "for the past four years [Bell] has increased his alcohol intake." (R. 207.) The court understands Dr. Gil to mean to say "decreased" in her report. Immediately after this sentence Dr. Gil reports that "[Bell] used to drink approximately four pints of hard liquor a day, now he only drinks half a pint of hard liquor on weekends." (*Id.*) This provides support for the notion that Dr. Gil meant to say that Bell's alcohol consumption has decreased and not increased. This is consistent with other evidence in the record (R. 98, 228), and with the ALJ's conclusion. (R. 15.)

3

On August 3, 2000, Dr. Carl Hermsmeyher, a state agency physician, reviewed Bell's medical evidence of record and opined that Bell "has the mental capacity to perform simple tasks." (R. 217.) On August 22, 2000, Dr. Ahmad Raziuddin conducted a medical examination of Bell. Dr. Raziuddin noted that Bell appeared well nourished and oriented to time, place and person. (R. 229.) Bell indicated to Dr. Raziuddin that he had loss of bladder control, which was controlled with medication. (R. 228.) Bell also stated that he had epigastric discomfort ("GERD"). (*Id.*) Dr. Raziuddin observed no difficulty breathing and no difficulty in movement. (R. 229.) Bell had no difficulty sustaining and understanding normal conversational voice, but was slow to respond to questions. (R. 229.) Examination of Bell's back showed full extension and flexion. (R. 230.) Bell's peripheral pulses were equal bilaterally. (R. 230.) He had no limitation in the movement of any joint, and his fist and grip strength were 5/5 bilaterally. (R. 230.) Bell's neurological examination was also normal. (*Id.*) Dr. Raziuddin noted that Bell had also cut down on his drinking within the last year. (R. 229.) Overall, Dr. Raziuddin diagnosed Bell with alcoholism, loss of bladder control, possible alcoholic gastritis or peptic ulcer disease and degenerative joint disease of the right knee and lower back. (R. 231.)

On August 25, 2000, F. Paul LaFata, M.D., a state agency physician, reviewed the medical evidence of record and opined that Bell could perform medium work with only occasional stooping and crouching. (R. 235-41.) On December 27, 2000, another state agency physician reviewed the medical evidence of record and opined that Bell could perform medium work which required only occasional crouching. (R. 243-50.) On January 9, 2001, David Brister, M.D., a state agency physician, reviewed Bell's medical evidence of record and opined

4

that Bell could not perform detailed jobs, but could perform simple, routine tasks adequately for full-time competitive work. (R. 250-52.)

On September 19, 2001, Bell was seen for a general check-up. (R. 302.) He complained of back pain, although his physical examination was generally normal with no edema or swelling of any joints and with distal pulses intact and equal. (R. 302.) Bell reported that he had no attacks of gout and that it was well-controlled. (*Id.*) Bell's GERD was also controlled with medication. (*Id.*) Bell reported that he took Tylenol to treat his arthritis. (*Id.*) On December 5, 2001, Bell was seen for complaints of back pain. (R. 301.) His doctor opined that Bell's gout was well-controlled but that he needed a rheumatology referral. (*Id.*) Bell was advised to return in three months. (*Id.*) Bell was subsequently discharged from his physical therapy on his back with no further follow-up needed because he had met his goals. (R. 300.)

## STANDARDS

The ALJ's findings of fact must be upheld if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson* v. *Perales*, 402 U.S. 389, 401 (1971); *Diaz* v. *Chater*, 55 F.3d 300, 305 (7th Cir. 1995). A federal court may not reevaluate the facts, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Diaz*, 55 F.3d at 305. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the responsibility for that decision falls on the Commissioner, not the court. *Herr* v. *Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). Conclusions of law are not entitled to deference; if the Commissioner commits an error of law, reversal is required without

regard to the volume of evidence in support of the factual findings. *Binion* v. *Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## DISCUSSION

Under 42 U.S.C. § 423(f),

> [a] recipient of benefits . . . may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling only if such a finding is supported by–
> (1) substantial evidence which demonstrates that–
> (A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and
> (B) the individual is now able to engage in substantial gainful activity; . . .

Social Security regulations define medical improvement as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 416.994(b)(1)(i). Social Security regulations also provide the following evaluation steps to determine whether an individual is still entitled to disability benefits:

> (i) Step 1. Do you have an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1 of subpart P of part 404 of this chapter?
> (ii) Step 2. If you do not, has there been medical improvement as defined in paragraph (b)(1)(i) of this section?
> (iii) Step 3. If there has been medical improvement, we must determine whether it is related to your ability to do work in accordance with paragraphs (b)(1)(i) through (b)(1)(iv) of this section; i.e., whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination.
> ***
> (v) Step 5. If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe (see § 416.921). This determination will consider all your current impairments

6

and the impact of the combination of these impairments on your ability to
function.
(vi) Step 6. If your impairment(s) is severe, we will assess your current ability to
do substantial gainful activity in accordance with § 416.960. That is, we will
assess your residual functional capacity based on all your current impairments and
consider whether you can still do work you have done in the past. If you can do
such work, disability will be found to have ended.
(vii) Step 7. If you are not able to do work you have done in the past, we will
consider one final step. Given the residual functional capacity assessment and
considering your age, education, and past work experience, can you do other
work? If you can, disability will be found to have ended. If you cannot, disability
will be found to continue.

20 C.F.R. § 416.994(b)(5).

The ALJ analyzed step 1 above and noted that "the evidence does not demonstrate the presence of a condition or combination of conditions that meet or equal the medical criteria for any impairment in the Listing of Impairments in Appendix 1 to Subpart P of Regulations No. 4." (R. 15.) Substantial evidence supports that conclusion. As the ALJ remarked, while Bell had degenerative spinal disc disease identified through a MRI, "this condition has not resulted in the significant ambulatory limitations discussed at section 1.00B of Appendix 1." Moreover, even considering the combination of Bell's impairments, the ALJ reasonably concluded based on the evidence that "the level of severity does not equal that contemplated for any of the Appendix 1 impairments." (*Id.*)

Next, for step 2, the ALJ concluded that there had been medical improvement since the time of Bell's most recent favorable determination. That decision is also supported by substantial evidence. Bell's most recent favorable determination diagnosed him with alcoholism and a personality disorder. Since then, Bell testified that his drinking habits had diminished and medical records showed no characteristics of a mental impairment. By September of 2000,

medical records revealed that Bell no longer manifested characteristics of a mental disease and had cut his drinking in half over the last several years. (R. 98, 207, 228.)

The ALJ next analyzed step 3–whether Bell's medical improvement related to his ability to do work. Medical improvement relates to the ability to do work if there is a decrease in the severity of the impairment present at the time of the most recent favorable medical decision and an increase in the functional capacity to do basic work activities. 20 C.F.R. § 416.994 (b)(1)(iii). The ALJ cited 20 C.F.R. § 416.994(b)(2)(iv)(A) to establish that Bell's medical improvement related to his work. That regulation contemplates that if an impairment was based on the Listing of Impairments in Appendix 1 of Subpart P of Part 303, and if medical improvement has occurred "and the severity of the prior impairment(s) no longer meets or equals the same listing section used to make our most recent favorable decision," the SSA "will find that the medical improvement was related to your ability to work." The ALJ, as noted above, concluded that medical improvement had occurred and that Bell no longer satisfied the listing criteria under the applicable regulations. Therefore, pursuant to § 416.994(b)(2)(iv)(A), the ALJ reasonable concluded that Bell's medical improvement was related to his ability to work. (R. 16.)

Because the ALJ concluded that Bell's medical improvement related to his ability to work, he next considered step 5–whether Bell's impairments in combination are severe. The ALJ believed so, and, therefore, moved to step 6, which requires assessment of whether Bell has the current ability to do substantial gainful activity in accordance with 20 C.F.R. § 416.960. *See* 20 C.F.R. § 416.994(b)(5)(vi) ("[W]e will assess your residual functional capacity based on all your current impairments and consider whether you can still do work you have done in the past."). The ALJ noted that Bell's impairments "continued to preclude the performance of any

8

past relevant work, because even [Bell's] least demanding past relevant work required more standing and walking than is usually required in sedentary work and which is inconsistent with [Bell's] residual function capacities...." (R. 18.)

Because Bell could not perform past relevant work, the ALJ considered the last step, under which "the burden shifts to the Commissioner to show that there were jobs existing in significant numbers in the economy which [Bell] could have performed consistent with his... age, education, work experience, and functional limitations." (*Id.*); 20 C.F.R. § 416.994(b)(5)(vii) ("Given the residual functional capacity assessment and considering your age, education, and past work experience, can you do other work?"). Based on the evidence, the ALJ surveyed the medical evidence and reasonably concluded that Bell's impairments precluded the following work-related activities:

> climbing, squatting, crawling, or kneeling; using foot controls; performing complex or detailed work tasks; standing and/or walking more than "occasionally" (more than one-third of a workday or approximately two hours total in a workday-SSR 83-10); and exposure to dust, fumes, and other environmental fumes.

(R. 16.)

Based on the limitations described above, the ALJ concluded that Bell was not precluded from doing other work. In support, he noted that Bell was 48 years old and, therefore, still classified as a younger individual. (R. 18.) Moreover, Bell had the residual functional capacity to perform a limited range of sedentary work. (*Id.*) The ALJ relied on the testimony of Entenberg, the vocational expert. Entenberg was asked whether a hypothetical individual with Bell's vocational characteristics and residual functional capacity as of September 2000 could have performed any jobs. Entenberg testified that such an individual could have performed the

jobs of assembler, packager, and quality control inspector. (*Id.*) Moreover, Entenberg testified that in the Chicago area there were 7,000 assembler jobs, 4,000 packager jobs and 3,000 quality control inspector jobs. (*Id.*) The ALJ characterized this as a "significant number of jobs," (*Id*), and that conclusion is reasonable. *Lee* v. *Sullivan*, 988 F.2d 789 (7th Cir. 1993) (1,400 is a significant number of jobs).

Accordingly, based on the above analysis, the ALJ concluded that Bell's disability ended in September 2000 and affirmed the decision to terminate Bell's benefits. Because that decision is supported by substantial evidence, Barnhart's motion for summary judgment is granted.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is granted [#14]. The clerk is instructed to enter judgment in favor of the defendant. This case is terminated.

ENTER: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: June 24, 2004

10